# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

Tawnya Martinez,

        Plaintiff,

v.                                                        Case No. 19-cv-2143-JWL

Prairie Fire Development Group, LLC;
Prairie Fire Construction Group, LLC;
and Prairie Fire Management Group, LLC,

        Defendants.

## MEMORANDUM & ORDER

Plaintiff was employed by defendants from April 2017 until July 2017, when defendants terminated her employment. She filed this lawsuit alleging that she was discriminated against because of her sex with respect to the termination of her employment and with respect to compensation, terms and conditions of her employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. She further alleges that she complained about discrimination and that defendants thereafter retaliated against her in violation of Title VII by refusing to pay her final wages; by opposing her application for unemployment benefits; and by providing negative feedback to her new employer. Finally, plaintiff asserts a claim under the Kansas Wage Payment Act for failure to pay wages and a claim for unpaid wages under the Missouri wage payment statute.

This matter is presently before the court on defendants' motion to dismiss certain counts of plaintiff's complaint (doc. 4). Defendants contend that plaintiff failed to exhaust her administrative remedies with respect to her sex discrimination claims and her claims that

defendant retaliated against her by refusing to pay her final wages and opposing her application for unemployment benefits. Defendants, then, move to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendants also move to dismiss plaintiff's Missouri wage payment claim under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. As will be explained, the motion is denied in its entirety.

*Standard*

Defendants' failure-to-exhaust argument is expressly asserted under Federal Rule of Civil Procedure 12(b)(1), suggesting that the issue relates to the court's jurisdiction over the case. Nonetheless, defendants also acknowledge the Circuit's decision in *Lincoln v. BNSF Railway Company*, 900 F.3d 1166 (10th Cir. 2018), in which the Circuit held that a Title VII plaintiff's failure to file a timely charge of discrimination does not bar a federal court from assuming jurisdiction over a claim but merely permits the employer to raise an affirmative defense of failure to exhaust. *See Lincoln*, 900 F.3d at 1185-86. Thus, defendants' failure-to-exhaust defense is properly examined under Rule 12(b)(6). *See Cirocco v. McMahon*, 768 Fed. Appx. 854, 858 (10th Cir. Apr. 15, 2019).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face." *Free Speech v. Federal Election Commission*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

2

(citations and quotations omitted). "In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference." *Id*. (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

*Background*

Consistent with the standard articulated above, the following well-pleaded allegations, taken from plaintiff's complaint, are accepted as true. Plaintiff began her employment with defendants in April 2017. According to plaintiff, defendants held a work retreat in May 2017 but invited only male employees and provided company vehicles to male employees but not female employees. Plaintiff further alleges that defendant paid her a much lower salary than it paid her male predecessor despite the fact that plaintiff was more qualified than her predecessor and had the same level of experience as her predecessor.

On July 7, 2017, one of defendants' owners, Rudy Manes, told plaintiff that defendants were terminating her employment because it "just wasn't working." Despite making numerous attempts to secure her final paycheck, plaintiff never received her final paycheck. Moreover, when plaintiff applied for unemployment benefits, defendants asserted that they had terminated plaintiff's employment for cause.

On February 20, 2018, plaintiff submitted an "inquiry" through the EEOC's online Public Portal and scheduled an in-person appointment as part of that inquiry. Plaintiff's responses to the online inquiry are attached to the complaint. Plaintiff's responses to the inquiry are found in a four-page document that explains in detail the nature of plaintiff's claims against defendants,

including her claims that only male employees received company vehicles, that she received a lower salary than her male predecessor, and that she did not receive her final paycheck after her employment was terminated. She further alleges in the inquiry that she advised the owners of defendants that their failure to provide female employees with company vehicles was an example of sex discrimination. The inquiry form indicates that plaintiff, on February 20, 2018, scheduled an in-person appointment with the EEOC for June 5, 2018 at 8:15am.

In late February 2018, defendants began a collaborative project with Community Housing of Wyandotte County (CHWC), plaintiff's new employer. Plaintiff's responsibilities with her new employer included oversight of this project. Plaintiff alleges that defendants praised plaintiff to her new employer and assured her employer that they had no problem working with her on the project.

On June 5, 2018, plaintiff submitted a formal Charge of Discrimination that was filed with both the EEOC and the Missouri Commission on Human Rights. She signed the charge that day. She filed an amended charge on June 29, 2018. Defendants refer to these June 2018 charges collectively as the "Missouri charge." Plaintiff alleges that once defendants received a copy of her formal charge in June 2018, defendants began making negative comments about her to CHWC and questioned plaintiff's integrity. In fact, defendant ultimately cancelled the project with CHWC, causing CHWC to lose money and causing plaintiff to lose salary and bonus money she would have earned for managing the project. Plaintiff filed another charge of discrimination in September 2018 to include a claim that defendant retaliated against her for filing her first charge when they cancelled the project with CHWC. This charge was filed with both the EEOC and the Kansas Human Rights Commission. Defendants refer to this charge as the "Kansas charge."

Plaintiff received her notice of right to sue relating to the Missouri charge on December 14, 2018 and filed her lawsuit within 90 days of receipt of that notice.

*Failure to Exhaust Administrative Remedies*

Under 42 U.S.C. § 2000e–5(e)(1), a party who wishes to pursue a Title VII claim of employment discrimination in federal court must first file a formal charge with the EEOC within 300 days of the "alleged unlawful employment practice." The Missouri charge identifies the date of the last adverse action as July 7, 2017—the date of plaintiff's termination. Because the June 5, 2018 Missouri charge was filed after the 300-day deadline, defendants move to dismiss the claims in the complaint that stem from that charge—plaintiff's sex discrimination claims and her claims that defendant retaliated against her by refusing to pay her final wages and opposing her application for unemployment benefits. In response, plaintiff asserts that she initiated the administrative process on February 20, 2018 when she submitted her detailed responses to the online inquiry and scheduled an in-person interview. According to plaintiff, her inquiry responses contain all the information necessary to be considered a charge and, thus, the inquiry form is sufficient to constitute a charge under Supreme Court and Tenth Circuit precedent. The parties' submissions, then, frame the sole issue as whether plaintiff's February 20, 2018 inquiry form constitutes a charge of discrimination for purposes of the exhaustion requirement.

In *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008), the Supreme Court held that a filing other than a formal charge, such as an intake questionnaire, may be considered as a charge if the filing contains the minimum information required by the regulations and can reasonably be interpreted as a request for agency action. The Court recognized that "under this

permissive standard a wide range of documents might be classified as charges," but found this result "consistent with the design and purpose of the ADEA," particularly because most charges are filed by laypersons. *Id.* As explained by the Court:

> In the administrative context now before us it appears pro se filings may be the rule, not the exception. The ADEA, like Title VII, sets up a "remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." The system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes. It thus is consistent with the purposes of the Act that a charge can be a form, easy to complete, or an informal document, easy to draft.

*Id*. at 402-03 (citations and quotations omitted). Ultimately, the *Holowecki* court found that the intake questionnaire constituted a proper charge because it contained the minimum information required by the regulations and, when coupled with an affidavit attached to the questionnaire, constituted a request for the agency to act. In doing so, the court rejected the defendant's argument that the plaintiff's subsequent (but untimely) formal charge indicated that the plaintiff did not intend for the questionnaire to constitute a charge. *Id*. at 406. According to the Court, "[p]ostfiling conduct does not nullify an earlier, proper charge":

> Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies. Construing ambiguities against the drafter may be the more efficient rule to encourage precise expression in other contexts; here, however, the rule would undermine the remedial scheme Congress adopted. It would encourage individuals to avoid filing errors by retaining counsel, increasing both the cost and likelihood of litigation.

*Id*.

With this standard in mind, as well as the Rule 12(b)(6) standard, the court turns to the online inquiry responses submitted by plaintiff.[1] Plaintiff's written responses to the online inquiry set forth the minimum information required by 29 C.F.R. § 1601.12(a) and (b), including an identification of the parties and a description of the alleged discriminatory actions. Plaintiff's inquiry responses include the approximate number of employees working for defendants; the plaintiff's name, address and telephone number, as well as those of her employer; detailed allegations that she had been the victim of sex discrimination; and a statement that she had not yet sought agency assistance with respect to her allegations. While the inquiry is not verified by plaintiff, the regulations expressly permit a later amendment to "cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein." 29 C.F.R. § 1601.12(b).

The next question, then, is whether the inquiry can be construed as a "request for the agency to take remedial action." As defendants highlight, plaintiff's inquiry responses merely relate factual information about plaintiff's allegations of discrimination. Plaintiff does not make any request of the agency in her inquiry, possibly because the questions asked in the inquiry do not

---

[1] The EEOC Public Portal was launched in late 2017 and, for the first time, individuals were able to submit online inquiries and requests for intake interviews with the agency. *See* Press Release, EEOC launches Online Services for Inquiries, Appointments and Discrimination Charges (Nov. 1, 2017), http://www.eeoc.gov/eeoc/newsroom/release/11-1-17.cfm. Perhaps because the feature is relatively new, neither the court nor the parties have uncovered any cases addressing whether an individual's responses to the online inquiry can constitute a charge. Nonetheless, in light of *Holowecki*'s acknowledgement that a "wide range of documents might be classified as charges," the court sees no reason why an online inquiry should be treated differently from an intake questionnaire or any other document short of a formal charge. The key, of course, is not the title of the document but whether the document meets the "charge" requirements as set forth in *Holowecki*.

7

seek that type of response. *See Holowecki,* 552 U.S. at 405 (design of intake questionnaire does not give rise to inference that employee requests action against employer; wording of questionnaire suggests only that the purpose is to facilitate pre-charge counseling and to enable agency to determine if it has jurisdiction over "potential charges"). But in any event, the Tenth Circuit, albeit in an unpublished decision, has instructed that the court's inquiry "does not end" with the document itself. *Semsroth v. City of Wichita*, 304 Fed. Appx. 707, 714 (10th Cir. 2008). In *Semsroth*, the Circuit, reviewing a district court's grant of summary judgment, looked not only at the plaintiffs' intake questionnaires for evidence of a request for the agency to take remedial action, but also at the subsequent actions of the plaintiffs. There, the Circuit found that the plaintiffs took additional steps after submitting the intake questionnaires to demonstrate their desire to start the EEOC administrative process—specifically, the plaintiffs contacted the EEOC subsequent to filing their questionnaires to request EEOC action. *Id*.

Here, plaintiff's complaint and the documents attached thereto reflect that plaintiff requested and scheduled an in-person interview at the time she filed her inquiry responses in February 2018; that a June 5, 2018 meeting was scheduled on February 20, 2018; and the plaintiff attended an in-person meeting on June 5, 2018. The combination of plaintiff's inquiry and her affirmative steps to initiate the administrative process are sufficient at this stage to bring her filing within the definition of "charge" adopted by the *Holowecki* court and applied by the Tenth Circuit. *See Semsroth,* 304 Fed. Appx. at 714 (standing alone, intake questionnaires could not be construed as request for agency action because they related only factual information; but officers' subsequent contacts with EEOC demonstrated desire to start administrative process such that questionnaires were deemed charges). Plaintiff's complaint, along with the documents attached

to it, set forth plausible allegations of timely exhaustion of administrative remedies. *See Carson v. Cudd Pressure Control, Inc.*, 299 Fed. Appx. 845, 848 (10th Cir. 2008); *see also Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) ("To be sure, on occasion it is proper to dismiss a claim on the pleadings based on an affirmative defense. But that is only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements.").[2]

*Missouri Wage Payment Claim*

Lastly, defendants move to dismiss the Missouri wage payment claim (Count IV of the complaint) under Rule 12(b)(6) for failure to state a claim for relief. Defendants contend that the complaint contains no allegations that defendants did business in Missouri and, in fact, alleges only that defendants did business in Kansas. *See* Mo. Ann. Stat. § 290.110 ("Whenever any person, firm or corporation doing business in this state . . . ."). As plaintiff highlights in her response, she specifically alleges in paragraph 111 of her complaint that defendants, at the time of plaintiff's termination, did business in Missouri. The court rejects defendants' argument that this "conclusory" allegation is inconsistent with plaintiff's allegations that defendants conducted business in Kansas. The complaint reasonably alleges that defendants did business in both Kansas

---

[2] Defendants complain that plaintiff has no evidence of follow-up phone calls or emails to the EEOC within the 300-day time period. Because defendants' motion is properly construed under Rule 12(b)(6), plaintiff need only set forth plausible allegations of exhaustion and she has satisfied her burden. Defendant also makes much of the fact that the EEOC Public Portal cautions individuals that submitting an online inquiry is different from filing a charge of discrimination. That advice, of course, is not inconsistent with the court's holding here—an online inquiry is not necessarily a charge of discrimination but may be construed as such in certain circumstances.

and Missouri. While the complaint itself suggests that plaintiff was employed in Kansas (plaintiff alleges that the "unlawful acts and practices . . . were committed within the state of Kansas"), the EEOC documents attached to the complaint suggest that plaintiff was employed in Missouri. Plaintiff, then, has stated a plausible claim for relief under the Missouri wage payment statute. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Defendants' motion to dismiss Count IV of the complaint is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss (doc. 4) is **denied**.

**IT IS SO ORDERED.**

Dated this 29th day of July, 2019, at Kansas City, Kansas.

       s/John W. Lungstrum
       John W. Lungstrum
       United States District Judge